**STATE of Tennessee, Appellee,**

v.

**Anthony Ernest LUNATI, Ralph P. Lunati and Freewheelin Social Club, Appellants.**

Court of Criminal Appeals of Tennessee, at Jackson.

Sept. 22, 1983.

Permission to Appeal Denied by Supreme Court Dec. 27, 1983.

Certiorari Denied April 16, 1984. See 104 S.Ct. 1913.

Phillip E. Kuhn and Barry W. Kuhn, Kuhn, Kuhn & Kuhn, Memphis, for all appellants at trial and Anthony Ernest Lunati and Freewheelin Social Club on appeal.

Tommy H. Jagendorf, N. Alan Lubin, Memphis, for appellant, Ralph P. Lunati, on appeal only.

William M. Leech, Jr., Atty. Gen., Jennifer Helton Small, Asst. Atty. Gen., Nashville, Hugh W. Stanton, Jr., Dist. Atty. Gen., Kathleen O. Spruill, Edgar A. Peterson, IV, Asst. Dist. Attys. Gen., Memphis, for appellee.

## OPINION

SCOTT, Judge.

The appellants were indicted along with Tamara L. Caraway in seven separate indictments, charging various offenses relating to prostitution and the possession and exhibition of obscene films. In one case Anthony Ernest Lunati and Ralph P. Lunati were charged with maintenance of a house of ill fame, in violation of TCA § 39–6–1001(a)(4). They were acquitted of that charge. In another case the Lunatis and Ms. Caraway were charged with attempting to procure females to become prostitutes in violation of TCA § 39–2–633. The Lunatis were convicted and received sentences of not less than nor more than one and one-half years in the state penitentiary. Ms. Caraway was acquitted. In separate indictments the Lunatis were charged with engaging in prostitution and each received a fine of $50.00. In three separate indictments Ralph Lunati was charged with the exhibition of three obscene movies. He was convicted of all three charges and received three sentences of sixty days in the Shelby County Correctional Center. The Freewheelin Social Club was charged with and convicted of possession of each of those films and was fined $25,000.00 for each film. The trial judge ordered Ralph Lunati's sentences to be served concurrently. In this appeal Ernest Lunati and Freewheelin Social Club have raised six issues. Ralph Lunati has raised four issues with numerous subissues. A brief recitation of the facts will aid in the understanding of all of the issues.

The Lunatis operated the Freewheelin Social Club in a converted residence at 3704 Summer Avenue in Memphis. The club was described as a swingers club, wherein the patrons could engage in whatever sexual activities they desired. Two undercover police officers, a male and a female, infiltrated the club. They attended sessions on three successive Saturday nights. Upon entering, they were greeted by Ms. Caraway and Ernest Lunati. For a small fee they were allowed entry. Each night they paid the required fee and signed a "license agreement" agreeing to comply with all rules and regulations of the club and also agreeing to bring no drugs or drug paraphernalia upon the premises.

In the living room Ralph Lunati was showing films portraying sexual intercourse, fellatio, cunnilingus and masturbation. The same three films were shown on each night the officers visited.

Games were played under the direction of Ernest Lunati. The games consisted of guessing the age at which the ladies lost their virginity or first performed fellatio. They also guessed the ladies' measurements. In order to facilitate this guessing, the participants were allowed to touch and to examine the body of the one about whom the guessing was taking place. Ernest Lunati had Tina Murphy do a nude dance on a table to facilitate the guessing of her measurements. Another game consisted of strip spin the bottle. When the bottle stopped on an individual he or she was required to remove an article of clothing. The game continued until the participants were nude.

There was one bedroom downstairs and two bedrooms upstairs. In these bedrooms mattresses were spread on the floor and the participants were invited to go to the bedrooms and engage in sexual intercourse and various other sexual activities in pairs and in larger groups. Ernest Lunati invited the lady detective to go upstairs and "get it on" with him. She declined. People were also seen walking around through the clubhouse naked and the doors to the bedrooms were never closed, so the officers and other participants were able to walk through and observe various sexual activities in progress.

On the third night other officers were called in and the club was raided. The management and the patrons were arrested, the films and other items of evidence were confiscated pursuant to a search warrant and participants were photographed in the bedrooms in the nude. From that raid these charges emanated.

In the first issue Anthony Ernest Lunati contends that the term "licentious sexual intercourse" as used in TCA § 39–2–631(a), does not conform to the due process standard of certainty required in a criminal statute, impermissibly intruded upon the rights of individual privacy, expression and association guaranteed by the First and Fourteenth Amendments of the United States Constitution and Article 1, Sections 8, 19 and 23 of the Tennessee Constitution.

Ernest Lunati was indicted under TCA § 39–2–632, which provides as follows:

It shall be unlawful to engage in, or to knowingly aid or abet in, prostitution or assignation or to procure or solicit or to reside in, enter, or remain in any vehicle, trailer, conveyance, place, structure, or building for the purpose of prostitution or assignation, or to keep or set up a house of ill fame, brothel or bawdy house, or to receive or direct any person for purposes of prostitution or assignation into any vehicle, trailer, conveyance, place, structure or building, or to permit any person to remain for the purpose of prostitution or assignation in any vehicle, trailer, conveyance, place, structure, or building, or to direct, take, or transport, or to offer or agree to take or transport, or to aid or assist in transporting or directing any person to any vehicle, conveyance, trailer, place, structure, or building, or to any other person with knowledge or having reasonable cause to believe that the purpose of such directing, taking or transporting is prostitution or assignation, or to lease or rent or contract to lease or rent any vehicle, trailer, conveyance, place, structure, or building, or part thereof, believing that it is intended to be used for any of the purposes herein prohibited, or to knowingly aid, abet, or participate in the doing of any of the acts herein prohibited.

The definitions of "prostitution" and "assignation" as used in that section are found in TCA § 39–2–631. Only the definition of prostitution is challenged. TCA § 39–2–631(a) provides that:

The term "prostitution" shall be construed to include the giving or receiving of the body for sexual intercourse for hire (or for licentious sexual intercourse without hire).

■■■■ It is settled that the fair-warning requirement embodied in the Due Process Clause prohibits holding an individual "criminally responsible for conduct which he could not reasonably understand to be proscribed." *Rose v. Locke,* 423 U.S. 48, 49, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975), quoting *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). If the statutory language when measured by common understanding and practices is so vague that "men of common intelligence must necessarily guess at its meaning and differ as to its application," then the statute is unconstitutional. *Connally v. General Construction Company,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). However, the prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many, perhaps most, statutes have some inherent vagueness for "(i)n most English words and phrases there lurk uncertainties." *Rose v. Locke,* supra, quoting *Robinson v. United States,* 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 944 (1945).

■■■ Even trained lawyers may find it necessary to consult legal dictionaries, treatises and judicial opinions before they may say with any certainty what some statutes may compel or forbid. All the Due Process Clause requires is that the law give sufficient warning that people may conduct themselves so as to avoid that which is forbidden. *Rose v. Locke,* supra.

The word "prostitution" is not a technical term and has no common law meaning. It is defined as the practice of a female offering her body indiscriminately for the pur-

pose of intercourse with men. The term normally suggests sexual relations for hire. 73 C.J.S. (Prostitution) § 1, p. 224. Thus, the first portion of the definition in TCA § 39–2–631(a) comports with the commonly understood definition of what has been described as the oldest "profession." Certainly it is an ancient practice, dating to early Biblical times. See: Genesis 38:13–21.

However, the parenthetical clause is the one under which Messrs. Lunati are charged, and it is asserted that the term "licentious sexual intercourse without hire" is too vague to pass constitutional muster. "Licentious" is defined as "disregarding accepted rules and standards; morally unrestrained, especially in sexual activity; lascivious." *Webster's New World Dictionary of the American Language,* Second College Edition, p. 815 (1980). "Licentious" is also defined as "characterized by license; overpassing due bounds; loose in behavior; profligate; dissolute; libidinous." *The New Webster Encyclopedic Dictionary of the English Language,* p. 490 (1971). The term is further defined as "lawless, hence, immoral or lewd." *The New York Times Everyday Dictionary,* p. 396 (1982).

By reference to these dictionaries, commonly available at any bookstore or library, one can readily ascertain the meaning of the word "licentious." It is hardly necessary to resort to legal research materials in order to determine when sexual intercourse is licentious.

The appellant contends that the term is so vague that it allows police officers a license to arrest anyone for any sexual activity the officers consider immoral, distasteful or out of place, including arrests of married couples in the privacy of their homes or unmarried couples fornicating in private, which, as the appellant points out, is not a crime in Tennessee. *Wilkerson v. Benson,* 542 S.W.2d 811, 812 (Tenn.1976).

■ The possibility that a police officer might misconstrue the statute is a problem which will only be addressed when and if such an event ever happens. Courts cannot settle abstract questions, however important, or however simple they may be, upon the supposition they may hereafter arise. They may never do so. *State ex rel. Palmer v. Wagoner,* 88 Tenn. 290, 12 S.W. 721 (1889).

■ The term "licentious sexual intercourse" must be interpreted in the context in which it is found, within the statute defining "prostitution." The term is not so vague that men of common understanding would have any difficulty ascertaining that these commercially operated swingers parties are included within the term. The statute is constitutional and this issue has no merit.

In his second issue, Ernest Lunati contends that the trial judge erred by refusing to grant a severance as to the defendants and as to the offenses. He contends that severances were required because he was not charged in the obscenity indictments in which his brother was charged.

■ Severance is a matter addressed to the sound discretion of the trial judge. The exercise of that discretion by the denial of a motion for severance will not be reversed unless it appears that the defendants were prejudiced by the trial judge's failure to sever. *State v. Coleman,* 619 S.W.2d 112, 116 (Tenn.1981).

Rule 8(a), T.R.Cr.P., provides for mandatory joinder of offenses "if the offenses are based upon the same conduct or arise from the same criminal episode" if known to the prosecutor at the time of the indictment and if within the jurisdiction of a single court. Permissive joinder is provided by Rule 8(b), T.R.Cr.P., if the offenses "constitute parts of a common scheme or plan or if they are of the same or similar character."

Defendants may be joined in the same indictment even if all of the defendants are not charged in each count and conspiracy is not charged if the various offenses were "part of a common scheme or plan" or "so closely connected in respect to time, place and occasion that it would be difficult to

separate proof of one charge from proof of the others." Rule 8(c)(3)(i) and (ii), T.R.Cr.P.

A defendant is entitled to a severance of offenses "unless the offenses are part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others." Rule 14(b)(1), T.R.Cr.P. The court shall also grant a severance of offenses if appropriate "to promote a fair determination of the defendant's guilt or innocence of each offense." Rule 14(b)(2)(i), T.R.Cr.P.

A severance of defendants shall be granted if, inter alia, "it is deemed appropriate to promote a fair determination of the guilt or innocence of one or more defendants." Rule 14(c)(2)(i), T.R.Cr.P.

■■■ All of the activities of the defendants, including the showing of the pornographic films were parts of a common scheme or plan to operate the swingers club. The trial of this case was lengthy and tedious. Frugality in the utilization of judicial time and resources are permissible considerations in determining whether to grant a severance, so long as the danger of prejudice to the defendant is not outweighed by these considerations. *Bruce v. State*, 213 Tenn. 666, 378 S.W.2d 758, 760 (1964). To have granted a severance of offenses or defendants in this case would have been a terrible waste of scarce judicial resources. The record does not contain the slightest hint of prejudice to Ernest Lunati by the joinder of offenses and defendants in this case. The trial judge instructed the jury that they were to consider the charges against each defendant individually. It is presumed that the jury followed his instructions. *State v. Barton*, 626 S.W.2d 296, 298 (Tenn.Cr.App.1981). In fact, both he and his brother were acquitted of one charge. This issue has no merit.

In the next issue Ernest Lunati contends that the state's escalation of the charges was a deliberate and malicious attempt to deny the appellants their due process and Sixth Amendment rights and was an arbitrary abridgement of TCA § 40–1131. This

section of our Code was repealed by Section 1, Chapter 399 of the Public Acts of 1979. Counsel actually is relying upon Rule 5(e), T.R.Cr.P.

■■■ A prosecutor does not violate due process by having a *nolle prosequi* entered on an indictment and resubmitting the case to the grand jury on a different charge. So long as the prosecutor has probable cause to believe that the accused committed an offense, the decision whether to prosecute, and what charge to bring before a grand jury, generally rests entirely in the discretion of the prosecutor. *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978).

■■■ No prejudice has been shown from the reindictment of the appellant and this issue has no merit.

In the next issue Ernest Lunati contends that the admission of the state's rebuttal proof and final summation to the jury were inherently prejudicial, improper and inflammatory, thus denying him a fair trial.

In their case in chief the appellants presented a documentary videotape showing thirty-one places in Shelby County which provide adult entertainment. They also introduced sexually explicit videotapes which were filmed from the screens of television sets in rooms in the Alamo Plaza Motel and the Admiral Benbow Inn. The appellants also presented various sexually explicit videotapes, magazines and books which their witnesses had purchased in Shelby County. Their avowed purpose was to show the types of sexual behavior that are tolerated in Shelby County.

In response to this proof the state presented the testimony of two Assistant District Attorneys General who testified about other obscenity cases they had tried in the Shelby County Criminal Court and the fact that the juries found the films in some of those cases to be obscene. Neither of these attorneys had seen the films at issue in this case, and it strains one's imagination to determine how their testimony was relevant to anything. Not hav-

ing seen the films at issue in this case, there was no way they could compare the films from their cases with the films shown in this case.

The other rebuttal proof consisted of the recall of one of the detectives who infiltrated the swingers club. He testified that he obtained a January 1980 edition of *Partners* magazine. Inside he found an advertisement for a videotape of a Partners Television Show. He ordered a copy of the videotape and it was played before the jury. The tape dealt with the subject of swingers clubs in the Memphis area and portrayed the appellant, Ralph Lunati, and his acquitted co-defendant, Tamara Caraway, engaging in sexual intercourse.

■■■■ "Rebutting evidence" is evidence which tends to explain or controvert evidence produced by the adverse party. *Cozzolino v. State*, 584 S.W.2d 765, 768 (Tenn.1979). Like any other evidence, rebuttal evidence must be relevant and material to the facts at issue in the case. *Merriman v. Smith*, 599 S.W.2d 548, 558 (Tenn.App.1979). Even relevant evidence should not be admitted if its probative value is outweighed by the prejudicial effect upon the jury. *State v. Banks*, 564 S.W.2d 947, 951 (Tenn.1978). The determination of the admissibility of rebuttal evidence lies in the discretion of the trial court. *Hardin v. State*, 210 Tenn. 116, 355 S.W.2d 105, 114 (1962).

■■■ The rebuttal evidence was aimed at Ralph Lunati and Tamara Caraway. Ernest Lunati has not shown how he was prejudiced in any way by the admission of this evidence. Any error in its admission was clearly harmless as to him. Rule 52(a), T.R.Cr.P., Rule 36(b), T.R.A.P. The rebuttal proof aspect of this issue has no merit.

Ernest Lunati also contends that the prosecutor erred by arguing to the jury that they should be the protectors of society and the guardians of Christian morals. Specific citations to alleged errors are not cited. Rather, in a footnote, the appellant points to forty-two pages of argument which he contends is erroneous, including five pages of argument by his own counsel.

Defense counsel first objected after the prosecutor made the following remarks:

You have to decide what the community will tolerate with regard to obscenity. When you talk about community standard, you won't be deciding what this community will tolerate. But because everybody is doing it, does that make it okay, does that make it legal? What if we had five hundred rapes next year? Would that mean that Memphis tolerates, condones and accepts and won't prosecute rapes?

In response to his objection to the use of the word "rape", the prosecutor changed the term to "car theft" and the argument continued until the prosecutor later said:

It could be north, south, east or west, and you're the ones that are going to have to decide who is going to tolerate it. You speak for this community. Shelby County. You speak for what Shelby County will tolerate. If you tolerate it, I submit to you, you will have it, north, east, south, and west.

I ask that you return a verdict of guilty in each of these indictments. When you get to—

Counsel objected to the use of the words "north, east, south and west" and moved unsuccessfully for a mistrial at that time.

In his final argument the prosecutor stated:

I submit that when you place yourselve (sic) in the average shoes, that everybody walking around out here in this county will say, we don't want this around here, and you'll bring back a guilty verdict as to each defendant on each indictment and set a penalty that you feel is appropriate and a penalty that is in accordance with that that truth dictates and justice demands. To do less is to fail in your duty to the oath you took in the big jury room, the oath you took yourselves over there, but also the oath you took to your community because you are the community here today. It is up to you to decide what all those other million people out

there want. Each of you, in essence, has more power than anybody we sent up to Nashville. Each of you represent around about a hundred thousand people here today. You have to make a decision that they want. If you were out there, what would you want them to do?

Thank you.

Defense counsel objected to this argument and again moved unsuccessfully for a mistrial.

These comments were improper arguments. However, not every improper comment warrants a reversal, only those which could have affected the verdict. *Harrington v. State*, 215 Tenn. 338, 385 S.W.2d 758, 759 (1965). In determining whether a comment was prejudicial, appellate courts must examine the remarks in light of five factors. *Judge v. State*, 539 S.W.2d 340, 344 (Tenn.Cr.App.1976). These factors are:

1. The conduct complained of viewed in context and in light of the facts and circumstances of the case.
2. The curative measures undertaken by the court and the prosecution.
3. The intent of the prosecutor in making the improper statement.
4. The cumulative effect of the improper conduct and any other errors in the record.
5. The relative strength or weakness of the case.

Applying these factors, it is clear that the quoted remarks were totally harmless. This was a very strong case, with the appellants caught in the act by undercover law enforcement officers. There were no other errors in the record except for one evidentiary problem hereinafter discussed. No curative measures were undertaken by the trial judge. The prosecutor's intent was obviously to get the jury to assess a heavy penalty. This issue is without merit.

In the next issue Ernest Lunati contends that the constitutional right of privacy extends to private sexual behavior between consenting adults and the state,

absent a compelling state interest, does not have a right to intrude upon that right of privacy. The appellant contends that the swingers parties were conducted in a private home with only consenting adults participating and were thus beyond the reach of law enforcement officials.

The appellant's contention that the acts were committed in private is patently without merit. The club was widely advertized on large billboards and signs on buildings located on busy thoroughfares throughout the City of Memphis. Five photographs of these billboards are included in the record. The large billboards contained advertisements as follows:

SWINGERS PARTY

CALL 324–5975

For Sexy Recorded Information

3704 SUMMER

In addition, a portable electric sign was in operation in front of 3704 Summer Avenue with the following lettering thereon:

SWINGERS PARTY

COUPLES ONLY

SAT 8PM 12PM CALL

SEXIE (sic) REC 458 6599

In *City of Chattanooga v. McCoy*, 645 S.W.2d 400, 403 (Tenn.1983), our Supreme Court upheld the constitutionality of a Chattanooga city ordinance prohibiting certain sexual conduct in "public place(s)". Among the definitions of "public place" contained in the ordinance were "private, fraternal, social, golf or country clubs". 645 S.W.2d at 401.

For an admission fee couples willing to abide by the terms of the license agreement could be admitted to the swingers club to watch or engage in sexual activities. This was a "public" facility where members of the public were admitted and clearly was not a private party in a private home. There was no violation of the appellant's right of privacy and this issue has no merit.

In the next issue Ernest Lunati and the Freewheelin Social Club adopted all of the errors advocated in the motion for a new

trial and all arguments, errors and authorities contained in the brief of Ralph Lunati.

■ To the extent that matters contained in the motion for a new trial are not briefed, they are waived. The brief must contain an argument setting forth the contentions of the appellant, the reasons therefor, citations to the authorities and appropriate references to the record. Rule 27(a)(7), T.R.A.P. Having failed to include an argument and citations on any of these issues, they are waived.

The appellants are entitled to adopt by reference any part of a brief of another party. Rule 27(j), T.R.A.P. Hence, the issues raised by Ralph Lunati have also been considered where appropriate as to Ernest Lunati and the Freewheelin Social Club.

In his first issue Ralph Lunati questions whether TCA § 39–2–631, et seq. are constitutional. This issue raises the same vagueness and right to privacy issues raised by Ernest Lunati. As heretofore set forth, these issues have no merit.

■ He further contends that TCA § 39–2–633 contains an impermissible gender-based classification, failing to meet the standards set forth in *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). However, this issue was not included in the pretrial motions or otherwise litigated in the trial court. Therefore, this issue cannot be considered by this Court. *Lawrence v. Stanford,* 655 S.W.2d 927 (Tenn.1983).

Next, Ralph Lunati questions whether the trial judge erred in denying his motion to suppress the three films seized at the time of his arrest.

■ At the time of the raid one of three pornographic motion pictures was being exhibited in the living room. The pornographic nature of the film was obvious to the most casual observer. It was in "plain view" of the officers who were lawfully on the premises. Hence, it was properly seized. *Armour v. Totty,* 486 S.W.2d 537, 539 (Tenn.1972).

However, the closed, unmarked film containers were not subject to seizure under the same rationale. As to those films, this case is analogous to *Walter v. United States,* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980). In that case several cartons of pornographic films were mistakenly delivered to L'Eggs Products, Inc., in Atlanta, Georgia. Not having ordered any pornographic films, the officials of that company, upon learning the contents of the cartons, delivered the films to the Federal Bureau of Investigation. After receiving the films, F.B.I. agents, without a search warrant, viewed the films. Thereafter, the defendants were indicted for the interstate transportation of some of the obscene films.

The Supreme Court held that the unauthorized exhibition of the films unreasonably invaded the owner's constitutionally protected right to privacy. 100 S.Ct. at 2400. In that case the labels on the individual boxes containing the films had suggestive drawings and explicit descriptions of the contents, but the larger unmarked cartons were opened by private individuals, thus exposing the suggestive labels. 100 S.Ct. at 2402. While the labels provided probable cause to believe that the films were obscene, there were no exigent circumstances excusing the requirement of a search warrant before the films were viewed. 100 S.Ct. at 2400.

In this case the search warrant which was obtained by the officers was for a $20.00 bill which had been used by the detectives to gain admission and for the admittance forms that were issued. No reference was made to any films. The containers in which the two unexhibited films were found were unmarked plastic film boxes which in no way revealed the nature of the motion pictures contained therein. Hence, it is clear that the admission of these two films into evidence was error. Therefore, the convictions for the exhibition and possession of these films (those charged in Indictments Nos. 83744 and 83745) are reversed and must be dismissed, since there can be no prosecution

without the obscene materials. *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15 (1978).

 In the next issue the appellant contends that he was denied a fair trial because of the introduction of the rebuttal proof. First, he points at the videotape which was shown. He contends that the trial judge erred in allowing this introduction because two defendants were participants and they appeared in the tape. He contends that the introduction of the tape was merely to incite the jury and prejudice the defendants in the eyes of the jury. He further contends that the state failed to lay a proper foundation for the introduction of the tape. He also contends that it was irrelevant and immaterial. He asserts that the introduction of this evidence was in violation of the best evidence rule. He further contends that the tape was so manifestly prejudicial that any probative value was outweighed by the prejudicial effect and that its introduction amounted to unfair surprise and violated the trial court's order regarding discovery.

It is difficult to understand how this videotape was relevant to any of the issues raised in this trial. It was not relevant to a determination of whether the films at issue were pornographic. It was not relevant to the issue of the community standards. The only effect that such evidence could possibly have was to inflame the jury, since it revealed in graphic living color the appellant's involvements in the field of obscene movies and sex clubs. The showing of this film in rebuttal was clearly error. However, equally clear is the fact that it was harmless error. One of the participants portrayed in the film, Ms. Caraway, was acquitted by the jury, and Ralph Lunati was acquitted of one of the charges against him.

A judgment of conviction shall not be reversed on appeal except for errors which affirmatively appear to have affected the result of the trial on the merits. Rule 52(a), T.R.Cr.P. This error clearly did not affect the result of the trial on the merits.

A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process. Rule 36(b), T.R.A.P. Considering the whole record, this error neither affected the judgment nor resulted in prejudice to the judicial process.

 Ralph Lunati also challenges the admission of the rebuttal testimony of the two Assistant District Attorneys General, contending that their testimony was irrelevant and incompetent hearsay, which in no way showed what comprised the community standard.

As heretofore stated, the admission of this testimony was clearly error for it did not touch the issues in this case in any way. However, it was also harmless error. Rule 52(a), T.R.Cr.P., Rule 36(b), T.R.A.P. Although the rebuttal proof was an attempt at prosecutorial overkill, it did not affect the verdict, and this issue has no merit.

 Ralph Lunati also contends that he was denied a fair trial because of the cumulative effect of the gross and numerous trial errors. He bases this allegation upon the fact that his motion for a new trial stated forty-six grounds and that Ernest Lunati's motion and Freewheelin Social Club's motion contained over fifty asserted errors. However, all of these alleged errors are simply the assertions of the very vigorous counsel who represented the appellants at trial and on appeal. Counsel's assertions of error in the motion for a new trial are not indications that the errors actually occurred. This issue has no merit.

 In the final issue the appellant contends that TCA § 39–6–1101, et. seq. are unconstitutional statutes. This issue is not briefed, but rather a fifteen page brief in another case setting forth this issue is appended to the appellant's brief as an exhibit and "incorporated by reference". Even without the inclusion of this appendix, the

seventy-one page argument far exceeds the fifty pages allowed for argument in the absence of an order from the appellate court or a judge thereof allowing a more extensive argument. Rule 27(i), T.R.A.P. In this case counsel for Ralph Lunati twice sought and were refused authority to argue in excess of fifty pages. However, they chose to disregard the orders of a judge of this Court.

Furthermore, we are unaware of any appellate procedure whereby one can incorporate by reference a brief from an unrelated case involving parties who are not parties to the appeal. Therefore, the brief appended to the brief in this case has not been considered by this Court. The appellant having failed to comply with Rule 27(a)(7), T.R.A.P. and properly present an argument on this issue, the issue was waived.

Finding all of the issues, with the exception of the issue concerning seizure of the two films, to be without merit, the judgments of conviction are affirmed as modified herein. However, because two films were illegally seized, the judgments against Ralph P. Lunati and the Freewheelin Social Club are modified. The convictions of Ralph P. Lunati and the Freewheelin Social Club in Cases numbered 83744 and 83745 are reversed and dismissed. The net effect is to reduce the sentence of Ralph P. Lunati to not less than nor more than one and one-half years in the state penitentiary and one sentence of sixty days in the Shelby County Correctional Center to be served concurrently and to pay a fine of $50.00. The fine to be paid by the Freewheelin Social Club is reduced from $75,000.00 to $25,000.00. The convictions of Anthony Ernest Lunati are affirmed without modification.

As modified, the judgments are affirmed.

DWYER and O'BRIEN, JJ., concur.