IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 24, 2006

## STATE OF TENNESSEE v. MICHAEL KENNETH SISCO

**Appeal from the Circuit Court for Warren County**
**No. M-9323     Larry B. Stanley, Jr., Judge**

_____

### No. M2005-01774-CCA-R3-CD - April 7, 2006

_____

A Warren County Circuit Court jury convicted the defendant, Michael Kenneth Sisco, of driving under the influence (DUI), second offense, a Class A misdemeanor, and the trial court sentenced him to eleven months and twenty-nine days with sixty days to serve in confinement and the balance on probation. On appeal, the defendant contends that the evidence is insufficient, that the trial court erred in allowing the testimony of a rebuttal witness, and that the trial court erred in sentencing. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Lisa Zavogiannis, McMinnville, Tennessee, for the appellant, Michael Kenneth Sisco.

Paul G. Summers, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Clement Dale Potter, District Attorney General; and Larry G. Bryant, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

At the trial, Warren County Sheriff's Deputy Jesse Reid testified that he had been a sheriff's deputy and an instructor on DUI detection and enforcement for fourteen years in Florida before becoming a sheriff's deputy in Warren County. He testified that he was working a shift from 5:30 p.m. to 6:30 a.m. on July 19, 2002, and that a few minutes before 9:00 p.m., a BOLO ("be on the lookout") was issued for an older model orange and white Ford pickup truck. He said that shortly after hearing the BOLO he saw the truck on Highway 55. He said the truck turned onto Todd Lane, entered the Country Club Market's parking lot, and parked blocking part of the driveway. He said he pulled behind the truck, walked to the driver's side door, and saw only the defendant sitting in the truck.

Deputy Reid said the defendant had bloodshot eyes, flushed cheeks, an odor of alcohol on his person, and appeared to be intoxicated. He said he asked the defendant to get out of the truck. He said the defendant was unsteady on his feet and grabbed the bed of the truck a couple of times while walking to the rear of the truck. He said that he asked the defendant to perform three field sobriety tests and that the defendant performed unsatisfactorily on all of the tests. He said he placed the defendant under arrest for driving under the influence, transported him to the county jail, and asked him to submit to a breathalyzer test. He said the defendant refused to submit to the test and signed the implied consent form acknowledging such.

On cross-examination, Deputy Reid acknowledged he did not see the defendant "weaving or doing anything erratic." He acknowledged the Country Club Market's parking lot did not have marked parking spaces. He said he received the BOLO at 8:57 p.m. and pulled behind the defendant at 8:58 p.m. He acknowledged that the BOLO was for a red and white truck and that the defendant's truck was orange and white. He said he did not see any open or empty alcohol containers in the truck. He acknowledged he could not tell from the smell of alcohol what the defendant drank, how much he drank, or when he had something to drink. He acknowledged that bloodshot eyes and red cheeks could be caused by other things and that he did not ask the defendant about any of those things. He said the defendant told him he had not had anything to drink. He said that the parking lot was paved and lighted and that no debris was present to interfere with the defendant's ability to perform the tests. He acknowledged that no line existed for the defendant to follow when he performed the heel to toe test. He said that the defendant was facing toward where the sun would set but that the sun had already set that day. He said it was about forty-five minutes from the time he pulled behind the defendant until the time they left the parking lot.

Troy Haston testified that the defendant was working for him on July 19, 2002, and that they worked from about 5:00 a.m. until around noon. He said that it was hot that day and that they had been laying shingles on a house. He said he and his employees went to lunch at Pizza Hut, and the defendant had a couple of beers with his meal. He said they left Pizza Hut around 1:30 p.m. and went to his house. He said the defendant left his house around 3:00 p.m. and was going to give another employee, Ed Lowery, a ride to Mr. Lowery's son's house. He said that the defendant was "fine" when the defendant left his house but that the defendant's face would get "real red" when he was out in the sun. On cross-examination, Mr. Haston acknowledged that he did not see the defendant again that day after he left his house around 3:00 or 3:30 p.m and that he did not know if the defendant had anything to drink after he left.

The defendant testified that on July 19, 2002, he woke up around 3:00 or 3:30 a.m., because he was working on a construction job in Cookeville. He said that they completed the job around noon and that it was hot. He said that everybody he worked with went to lunch and that he had two beers. He said he went to Mr. Haston's to unload equipment and left around 3:30 or 4:00 p.m. He said that Mr. Lowery left with him and that he was going to take Mr. Lowery to Mr. Lowery's son's house. He said Mr. Lowery was not a witness in the case because he was unable to locate him. He said that after leaving Mr. Haston's, they stopped at the Country Club Market because Mr. Lowery wanted to get cigarettes. He said that they did not stop anywhere else and that they arrived at the

market around 5:30 p.m. He said he pulled into the Country Club Market, waited in the truck while Mr. Lowery ran into the store, and was not blocking any of the gas pumps.

The defendant testified that he had the windows down in his truck because he did not have air conditioning and that Officer Reid walked up to him and asked if he had been drinking. He said he told Officer Reid he had consumed a few beers at lunch. He said Officer Reid did not tell him that his cheeks were red but that his cheeks probably were red because he had a skin condition that caused his skin to turn white and burn easily. He said the sun was in his eyes when he was performing the field sobriety tests. He said he believed he was able to perform all of the tests. He said Officer Reid put him in the back of the patrol car, and they waited about thirty minutes to one hour for a towing service to tow the defendant's truck. He said that Mr. Lowery was either still in the store at the time or that his son had picked him up. He said that it was dark when they arrived at the police department.

On cross-examination, the defendant acknowledged that based on the timeline he gave about the events, he would have been released from the jail around 8:00 p.m., when it still would have been light outside. He said he did not see Officer Reid pull into the parking lot. He acknowledged that if he only had two beers at 1:00 p.m. that there would have been no problem taking the breathalyzer test, but he said he did not submit to the test because he did not trust Officer Reid.

Tina Rowland, a 9-1-1 dispatcher and a rebuttal witness for the state, testified that she took a call from the Country Club Market on July 19, 2002, and that she had the call log sheet showing the dispatch was made at 8:57 p.m. On cross-examination, Ms. Rowland acknowledged the dispatch was for an older red and white pickup truck.

Upon request of the state and the defendant, the trial court took judicial notice of the fact that the sun set at 7:57 p.m. on July 19, 2002, according to the Old Farmer's Almanac. The state and the defendant stipulated that if the jury returned a guilty verdict it would be a second offense DUI. The jury found the defendant guilty of DUI.

At the sentencing hearing, the defendant testified that he was employed at a "meat manufacturing" company and had worked there almost two years. He said he was the supervisor and had made arrangements to be able to serve his time and keep his job, but not if he went to jail that day. He said he wanted to go to rehabilitation for the last part of his sentence. He asked the court to allow him to serve his sentence on weekends. He said he had not had any other DUIs since 1996. The trial court sentenced the defendant to eleven months and twenty-nine days in the Warren County jail with sixty days to serve in confinement and the balance on probation.

On appeal, the defendant contends the evidence is insufficient. He contends the trial court erred in allowing the testimony of a witness that the state failed to disclose or list on the indictment. He contends the trial court erred in sentencing him to sixty days without stating on the record the reasons for enhancing his sentence. The state responds the evidence was sufficient to sustain the defendant's conviction for DUI. It asserts the trial court did not err in allowing the testimony of the

state's rebuttal witness or abuse its discretion in sentencing the defendant to sixty days in confinement.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends the state presented insufficient evidence at the trial that the defendant drove or was in control of a motor vehicle on a public roadway, highway, or parking lot. The defendant asserts the evidence showed that Mr. Lowery was in the truck with the appellant. The defendant asserts Officer Reid never saw the defendant drive the vehicle or be in possession of the truck's keys. He asserts there was no testimony that the truck was running or that it was capable of moving under its own power. The state contends that under the totality of the circumstances, the evidence was sufficient to establish the defendant drove and was in physical control of his truck. The state asserts Officer Reid followed the defendant from Highway 55 into the parking lot of the Country Club Market. The state asserts the defendant's own testimony establishes that he drove the truck into the parking lot. It asserts that the defendant offered no evidence that someone else was driving.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence; rather, we presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

Tennessee Code Annotated section 55-10-401 states in pertinent part:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:
> (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system
> . . . .

At the trial, Officer Reid testified that he spotted the defendant's truck on Highway 55 and that he saw the defendant turn on to Todd Lane and into the parking lot at the Country Club Market. Officer Reid stated he pulled in behind the truck, approached the driver's side of the truck, and saw only the defendant inside the truck. Officer Reid testified that the defendant's eyes were bloodshot, his face was red, and he smelled of alcohol. Officer Reid asked the defendant to leave his truck and

saw the defendant was unsteady on his feet. Officer Reid asked the defendant to perform three field sobriety tests and allowed the defendant to attempt the tests several times, however the defendant performed unsatisfactorily on each test. The defendant refused to submit to a breathalyzer test. Additionally, the defendant testified that he was taking Mr. Lowery home and at no time did he testify that he was not driving the truck. We conclude that a rational juror could have found beyond a reasonable doubt that the defendant was driving his truck while under the influence of alcohol. The defendant is not entitled to relief on this issue.

## II. REBUTTAL WITNESS

The defendant contends the trial court erred in allowing the testimony of Ms. Rowland, the 9-1-1 operator, as a rebuttal witness. The defendant asserts Ms. Rowland should have been called in the state's case-in-chief. The state asserts the trial court did not err in allowing Ms. Rowland to testify as a rebuttal witness. The state asserts Ms. Rowland's testimony contradicted the defendant's testimony that he attempted the field sobriety tests before sunset. The state asserts that Ms. Rowland's testimony was limited to contradicting the defendant's testimony and that it was not required to disclose the witness's name to the defendant in advance.

Rebuttal evidence includes "[a]ny competent evidence which explains or is in direct reply to, or a contradiction of, material evidence introduced by the accused." Nease v. State, 592 S.W.2d 327, 331 (Tenn. Crim. App. 1979). Rebuttal evidence must be relevant and material to the facts at issue. State v. Lunati, 665 S.W.2d 739, 747 (Tenn. Crim. App. 1983). A defendant's discovery request for names of the state's witnesses does not include rebuttal witnesses. See State v. Teel, 793 S.W.2d 236, 246 (Tenn. 1990), superseded by statute as stated in State v. Reid, 91 S.W.3d 247 (Tenn. 2002). The state's duty to disclose the names of witnesses is directory, not mandatory. State v. Dellinger, 79 S.W.3d 458, 489 (Tenn. 2002). The admissibility of rebuttal evidence lies in the trial court's discretion and will not be overturned on appeal unless there has been a clear abuse of discretion. Id. at 488.

Officer Reid testified that he saw the defendant and initiated contact with the defendant shortly before 9:00 p.m. The defendant then testified on his direct examination that the sun was setting and was in his eyes while he was attempting the field sobriety tests. He also testified that he arrived at the Country Club Market around 5:30 p.m. In order to rebut the defendant's testimony that he arrived at the market before sunset and that the sun was in his eyes when he was performing the field sobriety tests, the state called Ms. Rowland as a witness. The state asked Ms. Rowland where she was employed, if she was able to locate records from the evening of July 19, 2002, if the log sheets were kept in the normal course of business, if she located a call from the Country Club Market, and what the time of dispatch was. Ms. Rowland testified the dispatch time was 8:57 p.m., which contradicts the defendant's testimony on direct examination about the timing of the events and about the sun being in his eyes. It was not until after the defendant testified that the state knew that the timing of the events would be an issue in this case. We conclude that the trial court did not abuse its discretion in allowing Ms. Rowland's testimony and that the defendant is not entitled to relief on this issue.

## III.  SENTENCING

The defendant contends the trial court erred by imposing an arbitrary sentence of sixty days instead of the minimum forty-five day sentence for second offense DUI.  The defendant asserts the trial court did not state what, if any, enhancement or mitigating factors existed.  The state contends the trial court correctly sentenced the defendant to sixty days in confinement.  The state asserts DUI misdemeanors are controlled by Tennessee Code Annotated section 55-10-403.  The state asserts the trial court stated that it sentenced the defendant upon consideration of all the appropriate sentencing principles and guidelines.  The state also asserts that even though the trial court was not required to put on the record the factors it used to determine the defendant's sentence, the trial court offered to grant the defendant a re-sentencing hearing but that the defendant did not accept the trial court's offer, thus waiving the issue.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct.  T.C.A. § 40-35-401(d).[1] As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper.  This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred.  State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment.  T.C.A. §§ 40-35-102, -103, -210; see State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991); State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

A defendant convicted of a misdemeanor is not entitled to the presumption of a minimum sentence.  State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).  Moreover, misdemeanor sentences do not contain ranges of punishments, and a misdemeanant may be sentenced to the maximum term provided for the offense as long as the sentence imposed is consistent with the purposes of the sentencing act.  State v. Palmer, 902 S.W.2d 391, 393 (Tenn. 1995).  Our statutory system concerning misdemeanor sentencing is designed to provide trial courts with continuing jurisdiction and a great deal of flexibility.  See T.C.A. § 40-35-302(d), Sentencing Commission Comments; State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995).

---

[1] We note that on June 7, 2005, the General Assembly amended Tennessee Code Annotated sections 40-35-102, -210, and -401.  See 2005 Tenn. Pub. Acts ch. 353, §§ 1, 6, 8.  However, the amended code sections are inapplicable to the defendant's appeal.

With regard to DUI offenses, Tennessee Code Annotated section 55-10-403(a)(1) sets mandatory minimum periods for confinement depending on whether the offense is a first or subsequent offense, and subsection (m) provides, "Nothing in . . . the Sentencing Reform Act of 1989[] shall be construed as altering, amending or decreasing the penalties established in this section for the offense of driving under the influence of an intoxicant."  T.C.A. § 55-10-403(m).  In addressing if DUI offenders must be sentenced in accordance with the sentencing act, our supreme court noted that

> the legislature has specifically excluded DUI offenders from the provisions of the Act when the application of the Act would serve to either alter, amend, or decrease the specific penalties provided for DUI offenders.  A trial judge may designate a service percentage in a DUI case under Tennessee Code Annotated Section 40-35-302(d) but that percentage may not operate to reduce the mandatory minimum sentencing provisions of the DUI statute.

Palmer, 902 S.W.2d at 394.  A DUI offender can be sentenced to serve the maximum punishment for the offense so long as the imposition of that sentence is in accordance with the principles and purposes of the Criminal Sentencing Reform Act of 1989.  Id.

The defendant contends that the trial court erred by failing to adhere to the misdemeanor sentencing guidelines in Tennessee Code Annotated section 40-35-302(d), which provides in pertinent part:

> In imposing a misdemeanor sentence, the court shall fix a percentage of the sentence which the defendant shall serve [in confinement]. . . . In determining the percentage of the sentence to be served in actual confinement, the court shall consider the purposes of this chapter, the principles of sentencing, and the enhancement and mitigating factors set forth in this chapter, and shall not impose such percentages arbitrarily.

See T.C.A. § 40-35-302(d).

At the sentencing hearing, the trial court stated

> I have considered all of the proof presented at the trial, as well as the testimony here today, and statements of counsel, in making the determination as to the sentence. . . . He will serve sixty (60) days of that sentence with the balance on probation. . . . I don't have any reason to believe that [the defendant] is an alcoholic.  I think this was just a bad decision.

-7-

At the motion for a new trial, the trial court stated that it did consider the purposes of the sentencing guidelines regarding enhancement and mitigating factors although it "may not have placed that on the record." The trial court told the defendant, "I'll grant you a re-sentencing hearing on that if you will let me know within five days." The defense counsel told the trial court, "I will ask my client." There is nothing in the record to reflect that the defendant accepted the trial court's offer to have a new hearing and have the trial court's findings of the enhancement and mitigating factors placed in the record. Relief is not available to a party "who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of the error." T.R.A.P. 36(a). We conclude the defendant has waived this issue for failing to request the re-sentencing hearing that the trial court offered to conduct.

## CONCLUSION

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.


_____
JOSEPH M. TIPTON, JUDGE