# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## MAY 1999 SESSION



**FILED**

July 8, 1999

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **C.C.A. NO. 02C01-9710-CC-00420** |
| Appellee, | ) | |
| | ) | **GIBSON COUNTY** |
| VS. | ) | |
| | ) | **HON. DICK JERMAN, JR.,** |
| **JAMES HYDE,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Aggravated Robbery, Aggravated Rape, Reckless Endangerment & Unlawful Weapon Possession) |

FOR THE APPELLANT:     FOR THE APPELLEE:

**GERALD S. GREEN**
147 Jefferson Ave., Suite 404
Memphis, TN  38103
    (On Appeal)

**JESSE H. FORD, III**
P.O. Box 1625
Jackson, TN  38302
    -and-
**DONNIE W. KNOTT**
P.O. Box 547
Milan, TN  38358
    (At Trial)

**PAUL G. SUMMERS**
Attorney General & Reporter

**R. STEPHEN JOBE**
Asst. Attorney General
John Sevier Bldg.
425 Fifth Ave., North
Nashville, TN  37243-0493

**CLAYBURN L. PEEPLES**
District Attorney General

**TED NEWMAN**
Asst. District Attorney General
110 South College St., Suite 200
Trenton, TN  38382

OPINION FILED:_____

**AFFIRMED**

**JOHN H. PEAY,**
Judge

**O P I N I O N**

The defendant was convicted of aggravated robbery, aggravated rape, reckless endangerment, and unlawful possession of a weapon and was sentenced as a Range I standard offender to an effective sentence of twenty-three years in the Tennessee Department of Correction. He now appeals, arguing that he was placed in double jeopardy by being tried as an adult in criminal court after participating in a juvenile transfer hearing that was essentially a delinquency hearing. He also complains that the police officers lacked probable cause for a warrantless search and seizure and that their investigatory conduct "shocks the conscience." Finding no merit to the defendant's arguments, we affirm.

The record on appeal contains only the technical record and the transcript from the juvenile transfer hearing, which reveals the following. A Trenton church daycare provider was robbed and raped at gunpoint one afternoon at work. After the incident, the victim summoned the Trenton police authorities and described her attacker as a very tall, thin black man wearing a red and black "Bulls" jacket. Because her attacker wore a ski mask during the incident, she could not identify his face. However, because her attacker forced her to perform oral sex on him, she described his genital area, stating, "He was long, little hair, a lighter color there."

The victim was taken to the hospital where a rape kit and pelvic examination was performed. Around the same time, an anonymous person called the Trenton police and said that the perpetrator had fled to Timmy Hyde's residence, which was a short distance from the crime scene. Officer William Sanders went to the residence and knocked on the front and back doors for ten minutes, but no one answered. A short time

2

later, Officer Sanders learned that after he had left the Hyde residence, two other police officers had stopped and released a vehicle in which the sixteen-year-old defendant, a relative of Timmy Hyde, was riding. Officer Sanders returned to the Hyde residence, where he talked with Tommy Hyde, the defendant's uncle, who volunteered to find the defendant and bring him to the police department.

Later, the defendant, accompanied by his relatives, arrived at the police department. Officer Sanders obtained permission to search the Hyde residence, which uncovered a red and black "Bulls" jacket matching the victim's description. The defendant agreed to submit to a blood sample for DNA analysis. Because of the nature of the victim's descriptions, Officer Sanders asked the defendant to accompany him into the bathroom and show him his genital area. According to Officer Sanders, the defendant voluntarily consented. In Officer Sanders' assessment, the defendant's penis was "long," as the victim had described. The DNA comparison of the defendant's blood sample with male cells taken from the victim's vagina produced a four-probe match that would have a 1 in 638,000,000 chance of occurring randomly in the black population.

Based on this and other evidence presented at the hearing, the juvenile court judge found that the statutory grounds for transferring the defendant to criminal court existed. The case then proceeded to indictment and ultimately a jury trial, where the defendant was convicted as charged.

The defendant first argues that the juvenile transfer hearing was essentially a trial on the merits of the delinquency petition against the defendant and that when he was tried as an adult in criminal court, he was placed in double jeopardy. As support for this conclusion, the defendant asserts that because the juvenile court found at the

3

conclusion of the transfer hearing that the offenses were committed in an aggravated manner, the court necessarily determined that the offenses were actually committed and thus determined his guilt.

According to the transfer hearing transcript, the juvenile court judge enumerated the factors under T.C.A. § 37-1-134 he must consider in determining whether the State could try the defendant as an adult in criminal court. One of these factors, the juvenile court judge stated, is whether "the alleged offense was committed in an aggravated pre-meditated manner." The juvenile court judge later stated, "I could restate on the record what I have just gone over [the § 37-1-134 factors], but I do specifically find in my docketing that each of those grounds of 37-1-134 were met at today's hearing."

A review of § 37-1-134 reveals that the juvenile court judge misspoke; the applicable factor to be considered is not whether the defendant committed the offense in "an aggravated pre-meditated manner," but whether he committed the offense in "an aggressive and premeditated manner." T.C.A. § 37-1-134(b)(4). Even so, we fail to discern how the juvenile court judge's finding necessarily constitutes a finding of guilt so as to implicate double jeopardy concerns, as the defendant contends. The record reflects that the juvenile court judge repeatedly acknowledged that the sole purpose of the transfer hearing was to determine whether the defendant should be tried as an adult. Never did the judge suggest that based on the evidence, he found the defendant to be delinquent or guilty; rather, he specifically limited his review of the evidence in context of determining "whether or not there are reasonable grounds to believe that the child committed the delinquent act as alleged," as required by § 37-1-134(a)(4)(A). Thus, contrary to the defendant's argument, jeopardy did not attach in the juvenile transfer hearing, and the defendant's trial as an adult, therefore, did not twice place him in

4

jeopardy. State v. Davis, 637 S.W.2d 471, 473 (Tenn. Crim. App. 1982)(where court simultaneously found that "reasonable grounds to believe" an offense had been committed and that the defendants were delinquent, jeopardy attached; but had the court found only "reasonable grounds" without a finding of guilt, "we would have no hesitancy in saying that double jeopardy did not attach").

Next, the defendant contends that because the reliability of the anonymous informant cannot be assessed, the police officers did not have probable cause for the "warrantless search and seizure" of the defendant's groin area. The defendant also contends that the police officer's personal assessment of the size of the defendant's genitalia cannot give rise to "the probable cause necessary for further investigation and prosecution." The limited record on appeal contains no indication that the defendant ever raised this issue in the trial court. Because this issue was not previously litigated, it has been waived. See, e.g., State v. Lunati, 665 S.W.2d 739, 749 (Tenn. Crim. App. 1983). Even so, contrary to the defendant's claim that Officer Sanders "forced" him to "exhibit his phallus," the limited record before us indicates that the defendant voluntarily consented. Further, the defendant cites no authority that "probable cause" is needed to merely investigate a suspect of a crime when the suspect voluntarily supplies authorities with incriminating evidence. The defendant's contentions lack merit.

Finally, the defendant asserts simply that the Trenton police department's investigation "shocks the conscience" and that the "search which began this investigation was humiliating and intrusive." The defendant also claims, "The whole prosecution was based on the fabrication of the Trenton Police." The defendant never specifies what this "fabrication" might be. Because of the conclusive nature of the defendant's assertions and the lack of authoritative citations, this issue is waived. Rules of the Court of Criminal

5

Appeals of Tennessee 10(b).  Even so, because nothing in the record supports the defendant's bald assertions, this issue lacks merit.

Finding no merit to the defendant's arguments, the judgments are affirmed.

_____
JOHN H. PEAY, Judge


CONCUR:


_____
JOE G. RILEY, Judge


_____
THOMAS T. WOODALL, Judge

6