# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### AUGUST SESSION, 1999

FILED

December 29, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,    )    C.C.A. NO. W1998-00583-CCA-R3-CD.
                       )
    Appellee,          )
                       )
                       )    SHELBY COUNTY
VS.                    )
                       )    HON. JOSEPH DAILEY
JAMES MORROW,          )    JUDGE
                       )
    Appellant.         )    (Direct Appeal- First Degree Murder)


FOR THE APPELLANT:

R. PRICE HARRIS
100 North Main, Suite 926
Memphis, TN 38103

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General & Reporter

PATRICIA C. KUSSMANN
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

WILLIAM L. GIBBONS
District Attorney General

EDWARD PETERSON
Assistant District Attorney
201 Poplar Avenue
Memphis, TN 38103


OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

On July 6, 1998, following a bench trial, in the Shelby County Criminal Court, James Morrow was convicted of two (2) counts of first degree murder. This appeal raises the following issues:

(1) Whether the evidence was legally sufficient to convict the defendant;

(2) Whether the trial court erred in denying defense counsel's motion to withdraw from the case;

(3) Whether the trial court should have suppressed the defendant's confession; and

(4) Whether the court erred in allowing the state to call lay witnesses to rebut expert testimony without giving prior notice to the defense.

The judgment of the trial court is affirmed.

# FACTUAL BACKGROUND

On June 21, 1996, James Morrow ("appellant" or "defendant") called 911 and told the operator that he had stabbed his wife and son to death, and that he had attempted to commit suicide. Police, responding to the call, arrived at the defendant's house and found both the defendant's wife, Velma, and his son, Jerrell, dead as the result of multiple knife wounds. The defendant was severely injured. Medical personnel arrived shortly thereafter and transported the defendant to a hospital where he was treated for multiple self-inflicted knife wounds and the apparent ingestion of a household cleaning solution.

Two days later, police officers questioned the defendant at the hospital. After waiving his <u>Miranda</u> rights, the defendant told the police that he had killed his wife and son because he was suffering from delusions at the time. This statement was typed by the police and signed by the defendant.

The defendant was indicted in December, 1996, and the trial court ordered a psychiatric evaluation to determine whether the defendant was competent to stand trial. Dr. Wyatt Nichols, a clinical psychologist, found that although the defendant was competent to stand trial, he was insane at the time of the killings.

The state proceeded to hire a second psychologist, Dr. Edward Wise. After conducting several interviews with the defendant and researching the defendant's medical background, Dr. Wise concurred with Dr. Nichols' earlier result.

On April 8, 1998, the defendant waived his right to a jury trial, and a bench trial commenced. First, the State Medical Examiner testified that although both victims died from multiple stab wounds, they each probably remained alive for some time while being stabbed. Next, a police officer who arrived on the scene testified that the defendant calmly asked the officer to shoot him and became angry when the officer did not. The officer who questioned the defendant in the hospital testified that the defendant waived his <u>Miranda</u> rights and voluntarily confessed to the murders. After this testimony, the state rested.

The defense called Dr. Nichols, who testified that in his opinion the defendant was insane at the time of the homicides. After a thorough cross-examination, however, Dr. Nichols admitted that the killings could have been the result of jealousy, not insanity. The defense then called Dr. Wise to testify. Unfortunately, Dr. Wise's schedule conflicted with the court's, and the remainder of the trial was rescheduled to accommodate Dr. Wise's schedule.

The trial did not resume until July 6, 1998, almost three months later. During the recess, the defendant and his attorney apparently had a disagreement. Both the defendant and his attorney filed separate motions asking the trial court to allow the defense counsel to withdraw and to appoint new counsel. When the trial resumed, the court denied those motions, and the defense continued presenting its case.

The defense called Dr. Wise who testified that he, too, was of the opinion that the defendant was insane at the time of the commission of the offenses. On cross-examination, Dr. Wise rejected the hypothesis that the killings were a result of the defendant's jealousy. The defense then rested.

In rebuttal, the state called seven (7) witnesses to rebut the experts' conclusions that insanity, not jealousy, precipitated the crime. All of these witnesses testified to seeing and/or hearing specific instances of the defendant's

jealous, controlling behavior before the killings took place. The trial court convicted the defendant and sentenced him to two concurrent life sentences.

**SUFFICIENCY OF THE EVIDENCE**

The appellant contends that, given the evidence at trial, no rational fact-finder could have concluded that the appellant was legally sane when he murdered his wife and son. He also asserts that the trial judge erred by ignoring the weight of the evidence presented at trial.

Although this case was a bench trial, the findings of the trial judge who conducted the proceeding carry the same weight as a jury verdict. State v. Tate, 615 S.W.2d 161, 162 (Tenn. Crim. App. 1981). Thus, on appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); State v. Cazes, 875 S.W.2d 253 (Tenn. 1994), cert. denied, 513 U.S. 1086, 115 S. Ct. 743, 130 L. Ed. 2d 644 (1995) ; Tenn. R. App. P. 13(e).

Moreover, questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this Court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This Court may not reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835.

First degree murder is "[a] premeditated and intentional killing of another." Tenn. Code. Ann. § 39-13-202(a)(1)(Supp. 1995). "'Premeditation' means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time." Tenn. Code. Ann. § 39-13-202(d)(Supp. 1996). Finally, the fact

finder may infer premeditation from the circumstances surrounding the killing. State v. Gentry, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993).

In this case, the state presented uncontoverted evidence that the defendant killed his wife and son intentionally and with premeditation. The state played a 911 tape in which the defendant calmly told the operator that he killed the victims because "they chose to die." The state also introduced the defendant's signed confession in which the defendant articulated his reasons, formed before the act, for killing the victims. He also told police that he had to chase his son down the hall to finish killing him. The medical examiner explained that both victims had been stabbed numerous times. Thus, the judge had more than enough evidence to convict the defendant if he was sane at the time of the killings.

The defendant claims, however, that the trial judge erred in not agreeing with two experts who testified that the defendant was legally insane at the time of the killings. Insanity at the time an offense is committed is an absolute defense to a crime. State v. Sparks, 891 S.W.2d 607, 615 (Tenn. 1995). Tennessee defines insanity as "an affirmative defense to prosecution that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature or wrongfulness of such defendant's acts. Mental disease or defect does not otherwise constitute a defense. The defendant has the burden of proving the defense of insanity by clear and convincing evidence." Tenn. Code. Ann. § 39-11-501(a)(Supp. 1996).[1]

At trial, the defendant presented two experts who testified that, at the time of the offense, the defendant was legally insane. Although the state did not offer any contrary expert testimony, it did offer rebuttal by lay-witnesses. The thrust of this rebuttal and of the state's cross-examination of the defense's experts was

---

[1] Although a criminal defendant has always been presumed sane, prior to 1995 he only had to present prima facie evidence to the contrary. The burden then shifted to the state to prove, beyond a reasonable doubt, that the defendant was sane at the time of the offense. In 1995 the Legislature amended Tennessee Code Annotated Section 39-11-501 to place the burden of proof of insanity on the defendant.

that the actions of the defendant were more likely those of a jealous, controlling husband than that of an insane person.

The fact-finder "is allowed to consider both lay and expert testimony as evidence, and it may discount expert testimony which it finds to be in conflict with the facts of the case." Sparks, 891 S.W.2d at 616. Accordingly, the judge, acting as fact finder, had both the prerogative and the duty to evaluate the credibility of all witnesses and to credit the testimony as he saw fit. In this case, he specifically stated that he found the defense's experts' theories implausible but found the state's witnesses credible. We will not second guess the trial judge's findings in this regard.

This issue is without merit.

## SUBSTITUTION OF COUNSEL

The defendant next contends that the trial court erred in denying his motion to allow defense counsel to withdraw and have new counsel appointed after his relationship with his attorney had deteriorated. We must disagree with the defendant on this point.

In this case, the timing of the trial was unusual. The trial commenced without a jury on April 8, 1998. The state concluded its direct proof on that day, and the defense called the first expert to testify. After the first expert testified, it became clear that the defense would need to call a second expert. In order to accommodate the second expert's schedule, the trial court adjourned and did not resume until July 6, 1998. In the interim (May 22, 1998), the defendant filed a *pro se* motion to have his appointed attorney replaced with new counsel. The defendant also filed a civil suit against the appointed attorney for malpractice and breach of promise.[2]  Several days later, the defense attorney filed a motion to

---

[2]The record is unclear as to when the suit was filed.

withdraw as counsel. The defendant's attorney renewed her motion on the day the trial resumed, and the judge denied relief.

A defendant who requests the substitution of defense counsel bears the burden of demonstrating that (1) counsel's representation is ineffective, inadequate, and falls below the range of competency expected in criminal representation; (2) the defendant and appointed counsel have been embroiled in an irreconcilable conflict; or (3) communications between the defendant and counsel have completely broken down. State v. Gilmore, 823 S.W.2d 566, 568-69 (Tenn. Crim. App. 1991). A defendant's refusal to cooperate with counsel, however, does not justify substituting counsel. State v. McClennon, 669 S.W.2d 705, 707 (Tenn. Crim. App. 1984).

A trial judge may permit the withdrawal of an attorney appointed to represent an indigent defendant in a criminal case for good cause. Tenn. Code Ann. § 40-14-205 (1990). He has wide discretion, however, in matters regarding the appointment and relief of counsel, and his action will not be set aside on appeal unless a plain abuse of that discretion is shown. State v. Branam, 855 S.W.2d 563, 566 (Tenn. 1993); State v. Rubio, 746 S.W.2d 732, 737 (Tenn. Crim. App. 1987). Here, the trial judge did not abuse his discretion when he found no basis for requiring appointment of new counsel. He listened to the defense counsel's arguments that her relationship with the defendant had become acrimonious and that the defendant had filed a civil suit against her. In response, the court found that the counsel's performance was more than adequate and that any breakdown in communications between the defendant and his attorney was not severe enough to require substitution of counsel. The court also found that the request was an improper one to make in the middle of trial, because

> [if the filing of a civil suit necessitated substitution of counsel] then in the middle of any trial that was heard in these courts if a defendant didn't like how things were going or wanted to reset this matter for six months, [he would only need to] walk across the street and file a civil suit, and boom, the attorney's gone and the case is reset.

The appellant also asserts that his filing of a civil suit against his attorney midway through the trial created a conflict of interest that required appointment of new counsel. An actual conflict, rather than a mere possibility of a conflict, must exist in order to implicate the defendant's Sixth Amendment rights. Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 1717-19, 64 L.Ed.2d 333 (1980). Furthermore, the appellant must show that the actual conflict adversely affected the lawyer's performance. Id.; Netters v. State, 957 S.W.2d 844, 848 (Tenn. Crim. App. 1997). Assuming arguendo that the lawsuit created an actual conflict of interest for the attorney, the appellant has not demonstrated how it affected his attorney's performance. State v. Street, 768 S.W.2d 703, 708 (Tenn. Crim. App.1988). Indeed, the trial judge found that the defense lawyer performed "extremely well." Based on the record before this Court, we agree with that assessment. For these reasons we find no reversible error in connection with the trial court's ruling on counsel's motion to withdraw.

This issue is without merit.

## SUPPRESSION OF DEFENDANT'S STATEMENT

The appellant also claims that the trial court should not have allowed his confession to be presented at trial. The defendant did not object to the admission of his statement at trial or raise the issue in his motion for new trial. Thus, this issue has been waived. Tenn R. App. P. 3(e); State v. Coker, 746 S.W.2d 167, 173 (Tenn. 1987), cert. denied, 488 U.S. 871, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988); State v. McPherson, 882 S.W.2d 365, 373 (Tenn. Crim. App. 1994). Further, the record of the suppression hearing is not in the record on appeal. Thus, we cannot reach the merits of the issue even absent the waiver. State v. Banes, 874 S.W.2d 73, 82 (Tenn. Crim. App. 1993).

This issue is without merit.

## SCOPE OF REBUTTAL

-8-

The defendant claims the trial court should not have allowed the state to call several rebuttal witnesses, all of whom testified that they had seen the defendant threaten his wife, his wife's co-worker, or otherwise act jealously and/or controlling the past. The defendant claims these witnesses did not rebut the defense of insanity, but were actually case-in-chief witnesses used by the prosecution to establish a motive for the murders. As such the defendant maintains he should have been given pre-trial notice that these witnesses would testify, and that the testimony is inadmissible because it is not true rebuttal testimony. See, State v. Jones, 1987 WL 25401 (Tenn. Crim. App. 1987). We must disagree with the defendant's assertions in this regard.

We have consistently held that any competent evidence which explains or is a direct reply to or a contradiction of material evidence introduced by the accused is admissible in rebuttal. State v. Smith, 735 S.W.2d 831, 835-36 (Tenn. Crim. App. 1987); State v. Jones, 1987 WL 25401 (Tenn. Crim. App. 1987). Furthermore, the scope of rebuttal evidence lies within the sound discretion of the trial judge, and his or her decision will not be disturbed absent abuse. State v. Scott, 735 S.W.2d 825, 828 (Tenn. Crim. App. 1987). Finally, it is well-settled that lay witnesses may be called to rebut expert testimony. Edwards v. State, 540 S.W.2d 641, 646 (Tenn. 1976), cert. denied, 429 U.S. 1061, 97 S.Ct. 784, 50 L.Ed.2d 777 (1977).

In this case both defense experts testified that they rejected the notion that the defendant killed his wife and son in a jealous, controlling rage. Specifically, Dr. Nichols testified that, although he considered the hypothesis that the defendant may have killed the victims because he was jealous, he thought the defendant's temporary insanity, not his jealousy, led to the killings. He also testified that he knew the defendant had a history of jealous behavior and knew the nature of the defendant's prior behavior. Dr. Wise agreed. The rebuttal witnesses were called to establish the extent of the jealous behavior

that the defendant exhibited before the crime. Each one refuted a key assumption on which the defense experts relied in forming their opinions that the murders were a result of insanity, not jealousy. For example, one witness testified that the defendant had lied to Dr. Nichols about his correspondence with the witness. Another testified that she had seen the defendant threaten to kill a man he suspected of having an affair with the defendant's wife. It is clear that this testimony was proper rebuttal to the defense expert's testimony. Thus, the trial court was within its discretion when it allowed these witnesses to testify without prior notice to the defense. See State v. Teel, 793 S.W.2d 236, 246 (Tenn. 1990) This issue is without merit.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE

CONCUR:

_____
DAVID H. WELLES, JUDGE

_____
JAMES CURWOOD WITT, JR., JUDGE