IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 5, 2002

## STATE OF TENNESSEE v. JAMES ANTHONY McCURRY

**Direct Appeal from the Circuit Court for Madison County
Nos. 99-396, 99-757, 99-846, and 00-626     Roy B. Morgan, Jr., Judge**

---

**No. W2002-00298-CCA-R3-CD - Filed January 31, 2003**

---

The Defendant pled guilty to possession of cocaine with intent to sell; reckless driving; two counts of driving with a suspended, cancelled, or revoked license; possession of cocaine; aggravated assault; and felony evading arrest. The trial court sentenced him to an effective sentence of twelve years and ordered him to serve his sentence on probation. The Defendant's probation officer subsequently filed a probation violation report, and following a probation revocation hearing, the trial court revoked the Defendant's probation. In this appeal, the Defendant argues that the trial court improperly relied on rebuttal testimony as substantive evidence at the hearing and thus that the court improperly revoked his probation. Finding no error by the trial court, we affirm the trial court's decision to revoke probation in this case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

Stephen P. Spracher, Assistant Public Defender, Jackson, Tennessee, for the appellant, James Anthony McCurry.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Background

In 2000, the Defendant, James Anthony McCurry, pled guilty to possession of cocaine with intent to sell; reckless driving; two counts of driving with a suspended, cancelled, or revoked license; possession of cocaine; aggravated assault; and felony evading arrest. Pursuant to the Defendant's plea agreement, the trial court sentenced the Defendant as a Range I, standard offender to eight years

for the his conviction for possession of cocaine with intent to sell; six months for the reckless driving conviction; six months for each of the driving with a suspended, cancelled, or revoked license convictions; eleven months and twenty-nine days for possession of cocaine; three years for aggravated assault; and one year for felony evading arrest. The trial court ordered that several of the counts run consecutively, resulting in an effective sentence of twelve years. The court ordered the Defendant to serve his twelve-year sentence on probation.

On December 12, 2001, the Defendant's probation officer filed a probation violation report. On January 31, 2002, the trial court conducted a probation revocation hearing and, following the hearing, revoked the Defendant's probation. The Defendant now appeals the revocation of his probation, arguing that the trial court improperly relied on rebuttal evidence as substantive evidence to revoke his probation. Finding no abuse of discretion by the trial court in revoking the Defendant's probation, we affirm the judgment of the trial court.

## II. Facts

The following evidence was heard at the Defendant's probation revocation hearing: Angela Stewart, a probation officer with the Tennessee Board of Probation and Parole, testified that she was assigned to supervise the Defendant while on probation. She recalled that she initially met with the Defendant in March 2001, and during this meeting, she explained to him the rules and regulations of his probation. Stewart reported that she instructed the Defendant that he was required to maintain employment and that he was to bring her a check stub or some type of verification from his employer to verify his employment. She stated that the Defendant never provided her with verification that he was employed, although she asked for verification from him during each subsequent visit.

Stewart further testified that she informed the Defendant of his required supervision fees. She stated that she told him that as long as he was unemployed and could bring her verification of his unemployment, his fees would be fifteen dollars a month. However, Stewart reported that the Defendant never paid his supervision fees. In addition, Stewart stated that she informed the Defendant that he was to pay his restitution, court costs, and fines once a month in an amount totaling at least fifty dollars. She testified that she told him that he was to verify his payments through receipts from the clerk's office. However, Stewart reported that the Defendant made only one payment, totaling one hundred dollars, from the time that she began supervising him until the time that the warrant for his arrest was signed.

Officer Wiser of the Jackson Police Department next testified at the hearing. He stated that on December 5, 2001, he was on patrol when he observed the Defendant in a blue Mercury Cougar stopped at a stop sign. He stated that he was aware of an outstanding warrant against the Defendant, so he turned his vehicle around and attempted to catch up to the Cougar. Wiser recalled that the Defendant pulled into a driveway, and he pulled into the driveway directly behind the Defendant. According to Wiser, the Defendant exited the vehicle and began to run, despite Wiser's admonitions to stop. Wiser reported that he pursued the Defendant on foot, but eventually lost contact with the Defendant. Officer Wiser stated that he subsequently determined that the Defendant's driving

privileges had been revoked. He also testified that to the best of his recollection, the license tag on the Mercury Cougar was registered to the Defendant's mother, Marilyn Benson.

The Defendant testified on his own behalf at the hearing. He stated that on December 5, 2001, he was riding with two other people in a blue Mercury Cougar which belonged to his mother. He denied driving the vehicle and stated that another man, Antonio Nelson, was actually driving. In addition, he reported that one of his girlfriend's relatives was also in the vehicle. The Defendant recalled that when he saw a police car turning around towards their car, he told the driver to pull into a driveway because he "knew what was fixing to happen." He reported that after Nelson pulled into the driveway, Nelson got out of the vehicle, holding a beer in his hand, and Officer Wiser then pulled behind their vehicle and "yelled out to" Nelson. According to the Defendant, Nelson ran behind a house. The Defendant stated that he then looked back and noticed that Officer Wiser was alone, so he and the other passenger in the vehicle got out of the car, walked up the street, and went into a house.

The Defendant testified that after being placed on probation, he looked for a job, but did not initially find one. He stated that although he was told by employers that they planned to hire him, the employers ultimately did not. He reported that he did not have a Social Security card and maintained that he could not apply for a job with a temporary service without one. The Defendant testified that he performed some small labor jobs and eventually began working for a friend of his uncle, who hired him for "cement construction." He stated that he used the money from this job to pay his restitution, court costs, and fines, and he claimed that he made more than one payment towards these costs. He stated, "I . . . came down here numerous . . . times and paid money." He testified that he believed he had delivered more than one verification of these payments to his probation officer. He also stated that he was unable to pay more than he actually paid.

On cross-examination, the Defendant explained that he asked Nelson to pull over because he knew that there was a warrant out against him. He stated that he was aware that Officer Wiser was chasing the wrong person, but he did not stay at the scene himself because he "didn't want to go to jail." He stated, "Wasn't no need in me staying in there when I seen wasn't nobody else out there." The Defendant also testified that although he had no check stubs to verify his employment, he had provided his probation officer with phone numbers that she could call to verify his employment. Finally, he stated that he kept his probation officer notified that he was "trying" and performing odd jobs, although he was unable to get a "real official job."

Following the Defendant's testimony, Officer Wiser was recalled to the stand. He testified that he saw the Defendant operating the blue Mercury Cougar on December 5, 2001. He stated that he was "a hundred percent sure" that the Defendant was the driver.

At the conclusion of the hearing, the trial judge made the following findings:
> I'm not making a finding against the Defendant as to fees or restitution. Certainly he has not had the best . . . employment situation, so I'm not making a

finding by [a] preponderance [of the evidence] as to fault or violation in those two respects.

As to employment, I also am not making a finding against the Defendant in that . . . he's had some misfortunes with employment, and I assume most of his jobs, from what he's testified to, he doesn't have check stubs, most of them must be cash.

What does concern me today is the allegations that he was driving on a revoked or suspended license on December 5th and that he evaded arrest. Now, in that respect, the Defendant acknowledges he was in this particular vehicle that belonged to his mother, tag numbers having been checked on the vehicle, and he readily admits he was in there. He said he just wasn't the driver. He also testifies that he knew that there was a warrant out for him and that they wanted him. This is a young man who's on probation acknowledging today under oath that on this particular occasion in December of 2001, again, he knew there was a warrant out for him and that they wanted him. There's no other witnesses here. He's mentioned a driver, Antonio Nelson, whom he's been friends with and known for a while. I haven't heard anything from Antonio Nelson. I have to make my decision on what's occurred today in this courtroom, and that's the testimony of the Defendant and the testimony of Officer Wiser.

Now Officer Wiser testified that he was an eyewitness, 100 percent sure that he saw this Defendant in this automobile described and the tags registered to his mother and that he knew that there was a warrant out. He also knew the driving status of this Defendant. He saw him initially at a stop sign. He tried to stop the Defendant, and ultimately the Defendant got out of the car, and the officer testifies he ran from him. There's every indication the Court can find and does find by a preponderance of the evidence that the Defendant would have reason to run because he knew they wanted him, and he didn't see any reason why he needed to go to jail at that point in time, as he puts it. I'm paraphrasing what he said.

By a preponderance of the evidence, I specifically find that this Defendant was seen by this officer driving that vehicle while his license [was] on revoked or suspended status and that he did evade arrest on that occasion and that he fled from the officer on foot. That finding having been made, the Defendant is revoked under those circumstances to serve sentence.

## III. Analysis

The Defendant now argues that the trial court abused its discretion by considering rebuttal evidence as substantive evidence. He contends that the trial court should have considered Officer Wiser's rebuttal testimony for impeachment purposes only. The record reflects that during cross-examination of the Defendant, defense counsel objected to a question by the State which indicated that Officer Wiser had testified that the Defendant was driving the vehicle on December 5, 2001. The trial court responded, "Objection sustained. He did testify he was driving, though." Following the Defendant's testimony, the State asked to have the record read back to determine whether Officer Wiser testified that he actually saw the Defendant driving on December 5, 2001. After hearing the

testimony, the State offered to recall Wiser to the stand to clarify his testimony. The court stated, "You can put him on if you choose to for rebuttal, to clarify or rebut."

A trial court may revoke a sentence of probation if it determines by a preponderance of the evidence that the conditions of probation have been violated. Tenn. Code Ann. § 40-35-311(e). The decision to revoke probation is within the sound discretion of the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). The judgment of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, the record must be void of any substantial evidence that would support the trial court's decision that a violation of the conditions of probation occurred. Id.; State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). Proof of a probation violation is sufficient if it allows the trial court to make a conscientious and intelligent judgment. State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984).

Rebuttal testimony is "that which tends to explain or controvert evidence produced by an adverse party." Cozzolino v. State, 584 S.W.2d 765, 768 (Tenn. 1979). It includes "[a]ny competent evidence which explains or is a direct reply to, or a contradiction of, material evidence" introduced by an adverse party. Nease v. State, 592 S.W.2d 327, 331 (Tenn. Crim. App. 1979); see also State v. Smith, 735 S.W.2d 831, 835 (Tenn. Crim. App. 1987). "Like any other evidence, rebuttal evidence must be relevant and material to the facts at issue in the case." State v. Lunati, 665 S.W.2d 739, 747 (Tenn. Crim. App. 1983). The admission or rejection of rebuttal evidence is a matter within the discretion of the trial court, and a trial court's decision regarding the admissibility of rebuttal evidence will not be overturned absent a clear abuse of discretion. State v. Scott, 735 S.W.2d 825, 828 (Tenn. Crim. App. 1987).

In this case, although Officer Wiser did not make a specific statement on direct examination that he actually saw the Defendant driving a vehicle on December 5, 2001, he arguably implied through his testimony that the Defendant was operating the vehicle that he stopped. Nonetheless, to clarify the record, the State opted to recall Wiser to the stand following testimony by the Defendant that he was merely a passenger in the vehicle. We find no error by the trial court in allowing the State to recall Officer Wiser on rebuttal. His testimony was relevant and material to the facts at issue at the hearing, and it was offered to contradict testimony by the Defendant that he was not driving. Furthermore, even assuming that Wiser's testimony that he was "a hundred percent" certain that the Defendant was operating the vehicle should have been introduced on direct examination, "it is well settled in Tennessee that it is within the discretion of the trial court to permit the State, in a criminal case, to introduce testimony in rebuttal which should have been introduced in chief." Johnson v. State, 469 S.W.2d 529, 530 (Tenn. Crim. App. 1971). We therefore conclude that the trial court did not abuse its discretion by permitting the State to recall Officer Wiser on rebuttal. Further, we conclude that the trial court did not abuse its discretion by revoking the Defendant's probation in this case.

Accordingly, we AFFIRM the trial court's revocation of the Defendant's probation.

_____
ROBERT W. WEDEMEYER, JUDGE