IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 1, 2012

**STATE OF TENNESSEE v. XAVIER BELL**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 10-05479      Paula Skahan, Judge**

**No. W2011-01424-CCA-R3-CD  - Filed August 2, 2012**

A Shelby County jury convicted the Defendant, Xavier Bell, of aggravated robbery, and the trial court sentenced the Defendant, as a Range I, standard offender, to serve nine years in the Tennessee Department of Correction.  The Defendant appeals his conviction, contending that: (1) the evidence is insufficient to support his conviction; and (2) the trial court erred when it admitted recordings of the Defendant's jail telephone conversations.  After a thorough review of the record and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ. joined.

Barry W. Kuhn (on appeal), Alisa Kutch (at trial), and James Greene (at trial), Memphis, Tennessee, for the appellant, Xavier Bell.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; Glen Baity and Stacy McEndree, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**
**I. Background**

This case arises from the armed robbery of the victim, Ericka Coleman, while she sat in her car outside a friend's home.  For this crime, a Shelby County grand jury indicted the Defendant for aggravated robbery.  At the Defendant's trial, the parties presented the following evidence: The victim testified that on January 1, 2010, she was in Memphis visiting friends.  She recalled that she first went to a bank in Millington to withdraw money and  then drove to

her friend Tara Davis' home. The victim said that, at approximately 1:00 p.m., she sat in her heated car while she waited for her friend. As she sat there, she saw the Defendant in her rear-view mirror approaching her car. She said that, after seeing him, she locked the car doors. The Defendant walked up to her car and began beating on the driver's side window with a silver pistol. The victim described the Defendant as "medium build" and wearing a white T-shirt, black pants, and a white baseball hat. She noted that the Defendant was not wearing a coat or anything to cover his face. The victim testified that the Defendant scared her but did not beat on the window very long before she opened the car door and handed him her purse. At trial, the victim identified the Defendant as the perpetrator of this crime.

The victim testified that she had the $350 she had just withdrawn from the bank, a $15 Wal-Mart gift card, an EBT card, and two bank cards in her purse. She said that the Defendant beat on her car window hard enough to leave a mark on the window. After the Defendant fled with the victim's purse, she called 911. When police arrived, the victim gave a statement, and several days later she identified the Defendant in a photographic line-up. The document was dated January 3, 2010, and, at the bottom of the page, the victim had written, "I was sitting in my car. This guy hit my window with a silver pistol, and I opened the door and gave him my purse."

Michael England, a Memphis Police Department officer, testified that he responded to a robbery call on January 1, 2010. He spoke with the victim who he described as "very upset," "crying," and "emotionally distraught." The victim told Officer England that her purse had been taken from her and that the perpetrator had run northbound away from her vehicle. Officer England said that he observed chipped glass on the driver's door window and fine glass powder on the window. Officer England read the following description the victim provided of the robber as a "male black around five foot, eleven, wearing a white cap - or hat - dark shirt and blue jeans."

Christopher Valden, a Memphis Police Department sergeant, testified that he showed the victim a photographic line-up, which included the Defendant's picture. The victim quickly identified the Defendant as the man who robbed her. Sergeant Valden described the victim's identification of the Defendant in the photographic line-up as "immediate" and "definitive."

April Gibson testified on behalf of the Defendant that she and the Defendant had five children together. At the time of the robbery, Gibson and the Defendant lived together, although the relationship had since ended. She stated that, at the time of the trial, she could not "stand him." Gibson recalled that she and the Defendant woke up at 10:00 a.m. or 11:00 a.m. on New Year's Day. She said she cooked breakfast while the Defendant helped with their children. Her mother was also at their home that morning and left between 12:30 p.m. and 1:00 p.m. Around this same time, the Defendant's mother called and asked him to come over

to her home to help her take down Christmas decorations. Gibson said that the Defendant's mother lived within walking distance, approximately five minutes away. The Defendant left for between thirty minutes and an hour to help his mother and then returned home for the rest of the day. Gibson was unsure of the exact time the Defendant went to his mother's home, but she recalled that it was after her mother had left. When the Defendant returned, he did not have any money, credit cards, or a purse.

On cross-examination, Gibson testified that she hated the Defendant because he cheated on her. Gibson denied calling the Defendant while he was in jail, but she agreed that she visited him in jail until she "got the truth out of him." The last time she had visited the Defendant in jail was a month before the trial. Gibson agreed that the Defendant's mother's home was in close proximity to where the robbery occurred. Gibson testified that the Defendant had no reason to rob someone because they were "never broke." She stated, "if he was to rob somebody, I don't see why or how because, I mean, we've never been without." She explained that both she and the Defendant worked and that her family "helped [her]."

The State called Juaquatta Harris, a Shelby County Sheriff's County deputy, as a rebuttal witness. Deputy Harris testified that she downloads and disseminates inmates' telephone calls. Deputy Harris said that she received a fax on February 22, 2010, requesting the recordings of the Defendant's telephone conversations. Deputy Harris identified a disc of downloaded telephone conversations dated March 9, 2011. Deputy Harris said that the disc contained seventy telephone conversations between April Gibson and the Defendant.

Three excerpts of the recorded conversations were played for the jury. The first was from a conversation that took place on August 6, 2010.

| [Gibson]: | That's not my fault. Ain't nobody tell you to go run around with Tameka on New Year's. |
|---|---|
| [The Defendant]: | Mane, look . . . so what you saying though? I'm . . . I'm . . . |
| [Gibson]: | Oh, mane look back at New Year's. Okay? You need to think about it every year you wasn't with me. So, why the f**ck you trying to be with me now? You wasn't with me then. Don't try to be with [me] now. That's all I'm trying to say. |
| [The Defendant]: | Okay then. You know what I'm saying. |

| | |
|---|---|
| [Gibson]: | You wasn't studying me and the kids then.  Why you studying me and the kids now so bad? |
| [The Defendant]: | So, you telling me that I ain't fixing to see them kids period then, right? Right? |
| [Gibson]: | I'm asking you.  You wasn't studying us then, so why you studying us now? |
| [The Defendant]: | Cause . . . I couldn't get them, because then when I was out, I would come to see them every day.  Now, I can't see them, period. |

The next excerpt played was recorded on August 8, 2010.

| | |
|---|---|
| [Gibson]: | Kids . . . mane . . . . |
| [The Defendant]: | That ain't got nothing to do with them folks.  Any excuse you make ain't got nothing to do with my kids.  You . . . . . |
| [Gibson]: | Shut up, but every mother f**king New Year's, every mother f**king New Year's you was with another bitch. |
| [The Defendant]: | Naw . . . that ain't true. |
| [Gibson]: | I'm through.  I'm through with it Zay. |
| [The Defendant]: | Well, I ain't say nothing about that.  I'm talking about my kids.  What is that got to do with the kids. |

The last excerpt played was also recorded on August 8, 2010.

| | |
|---|---|
| [The Defendant]: | I was . . . . |
| [Gibson]: | . . . cause you wasn't planning to do nothing. |
| [The Defendant]: | Yes I was. |
| [Gibson]: | I'm talking about you hang around with Rob and, and |

-4-

|                    | f**k off on the weekends, lie about the girls when I catch you up, and then look there. |
|--------------------|---|
| [The Defendant]:   | **(Interrupting)** I'm not fixing to do that. But look . . . look . . . . |
| [Gibson]:          | . . . cause I was taking care of everything expensive for these children and I can't find you, and you act like, "awe, I'll see you when I'm done." I saw you boy, all down them streets. You saying you were going to do this and that, but the problem was you were putting that s**t up yo' nose. |
| [The Defendant]:   | No I wasn't, and you just shot the . . . . |
| [Gibson]:          | I ain't do nothing. |
| [The Defendant]:   | How you make . . . . |

Mark Glanker, a Shelby County District Attorney's Office investigator, testified that he requested the Defendant's recorded telephone conversations while in jail. After receiving the recordings from Deputy Harris, he began listening to the conversations. Glanker testified that he was familiar with both Gibson's and the Defendant's voices and recognized their voices on the recorded telephone conversations.

On cross-examination, Glanker agreed that the assistant district attorney assigned to this case asked Glanker to request the telephone recordings. Glanker testified that he listened to the recordings played for the jury for the first time the night before and conveyed to the assistant district attorney assigned to this case the contents of the conversations that morning.

Based upon the evidence, the jury convicted the Defendant of aggravated robbery. The trial court ordered the Defendant to serve nine years for this conviction. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant claims that: (1) the evidence is insufficient to support his convictions; and (2) the trial court erred when it admitted recordings of the Defendant's jail telephone conversations.

## A. Sufficiency of the Evidence

The Defendant claims that the evidence presented at trial is insufficient to sustain his conviction for aggravated robbery because the victim's testimony was uncorroborated. The State responds that the jury could reasonably infer that the Defendant, while brandishing a weapon, took the victim's purse. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). "The standard of review [for sufficiency of the evidence] is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "'A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State.'" *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality

of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S .W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

In the case under submission, the Defendant was convicted of aggravated robbery. Aggravated robbery is robbery: "(1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it would be a deadly weapon . . . ." T.C.A. § 39-13-402 (2010). Robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401 (2010).

Considering the evidence in the light most favorable to the State, the proof at trial showed that the Defendant lived near the location of the robbery and left his home around the time of the robbery to go to his mother's house, which was also in close proximity to the scene of the robbery. The Defendant approached the victim's car, where the victim sat waiting for her friend. The Defendant hit the car's driver side window with his pistol with such force that it left marks. The victim opened her car door and handed the Defendant her purse, which contained $350 in cash, bank cards, and gift cards. The Defendant then fled with the purse. The victim provided the police with a description of the Defendant and, two days after the robbery, she positively identified the Defendant in a photographic line-up. As to her ability to identify the Defendant, the victim testified that, at the time of this incident, nothing obstructed her view of the Defendant's face. Based upon this evidence, we conclude that a jury could find beyond a reasonable doubt that the Defendant committed an aggravated robbery.

The Defendant complains that the victim's testimony was uncorroborated and, therefore, insufficient to sustain his conviction. This Court, however, has held that the testimony of a victim, by itself, is sufficient to support a conviction. *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). In addition to her in-court identification of the Defendant, the victim identified the Defendant as the robber in a photographic line-up two days after the robbery and at trial. The victim's identification of the Defendant was described as "immediate" and "definitive." We conclude that her testimony is sufficient to sustain the Defendant's conviction.

## B. Admission of Telephone Recordings

The Defendant contends that the trial court erroneously admitted the recorded telephone conversations between he and Gibson in violation of Tennessee Rule of Criminal Procedure 12.1(b)(2) and Tennessee Rule of Evidence 404(b). The State responds that the trial court properly admitted the recorded telephone conversations. We agree with the State.

The admissibility of rebuttal evidence lies in the trial court's discretion and will not be overturned on appeal unless there has been a clear abuse of discretion. *State v. Dellinger*, 79 S.W.3d 458, 488 (Tenn. 2002). "An appellate court should find an abuse of discretion when it appears that the trial court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. James*, 81 S.W.3d 751, 760 (Tenn. 2002) (internal quotations omitted). Rebuttal evidence includes "any competent evidence which explains or is in direct reply to, or a contradiction of, material evidence introduced by the accused." *Nease v. State*, 592 S.W.2d 327, 331 (Tenn. Crim. App.1979). Rebuttal evidence must be relevant and material to the facts at issue. *State v. Lunati*, 665 S.W.2d 739, 747 (Tenn.Crim.App.1983).

### 1. Notice Response to Alibi Witness

The Defendant contends that the trial court erred when it allowed the State to play excerpts of recorded telephone conversations between he and Gibson to rebut Gibson's testimony that: (1) she never spoke with the Defendant on the phone; (2) the Defendant was not with Gibson on New Year's; and (3) Gibson did not accurately portray their financial status. Specifically, the Defendant contends that the State should not have been allowed to play the recorded conversations because the State failed to give notice of its intent to do so at least ten days before trial, as required by Rule 12.1(b) of the Tennessee Rules of Criminal Procedure.

Tennessee Rules of Criminal Procedure, Rule 12.1 states:

> Upon written demand of the district attorney general stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, or at such different time as the court may direct, upon the district attorney general a written notice of an intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom the defendant intends to rely to establish such alibi.

The rule further provides for the State to disclose, within ten days of receiving the defense notice, the names and addresses of the witnesses upon whom the State intends to rely to establish a defendant's presence at the scene and any witnesses upon whom the State will rely to rebut a defendant's alibi. Tenn. R. Crim. P. 12.1(b).

Tennessee Rule of Criminal Procedure 12.1(e) allows the trial court, for good cause shown, to grant an exception to any of the requirements of Rule 12.1.

Factors to be considered in determining whether a trial court abused its discretion in excluding undisclosed alibi proof include:

> (1) the amount of prejudice that resulted from the failure to disclose, (2) the reason for nondisclosure, (3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events, (4) the weight of the properly admitted evidence supporting the defendant's guilt, and (5) other relevant factors arising out of the case.

*State v. Looper*, 118 S.W.3d 386, 423 (Tenn. Crim. App. 2003).

The Defendant filed a Notice of Alibi Defense on February 23, 2011, and an amended response on March 9, 2011. Deputy Harris made a disc of the phone conversations on March 9, 2011, and Glanker received the disc on March 14, 2011. The Defendant's trial began on March 21, 2011. After Gibson testified, the State requested that tape recorded conversations between the Defendant and Gibson be admitted as rebuttal evidence. The Defendant's attorney objected and, after hearing from both parties, the trial court made the following finding:

> I've already stated that I certainly think this should have been turned over as soon as it was discovered by the state[.] It sounds like the investigator, after Ms. Gibson's testimony in the February trial, had suspicions that she wasn't being truthful; that she did have an ongoing relationship with the [D]efendant; that she probably [was] visiting with him on the phone; and requested all of the telephone calls. And just from my prior history, requesting those phone conversations, it does take a little bit of time to obtain them; and then according to the state's attorney, his statement today, that he hasn't had a chance to listen to them, and just, today, has gotten the transcripts. Those are - I think everybody in the courtroom who just listened to them, they were very difficult to understand. There's a lot of street talk in them. It's not - they're not clear as far - they are not articulated words. Without the transcript, I couldn't understand what these people were saying. . . . I think there is good cause shown.

-9-

Gibson testified that she "hate[d]" the Defendant, and she had no phone contact with him. She further stated that they were financially stable negating the Defendant's motive for a robbery. Gibson testified that she was with the Defendant for all but approximately an hour of New Year's Day. The recordings of these telephone conversations, to some degree, contradict Gibson's testimony.

The prejudice to the Defendant caused by the late notice was minimal. The Defendant was an active participant in these phone calls and, thus, very much aware of their existence and availability for trial use. Further, the State's reason for nondisclosure is reasonable. Although the assistant district attorney was aware of the disc of recordings, he was not aware of the specific content of the conversations admitted until the day the recordings were admitted in court. Other conversations the State sought to introduce which were discovered before the trial, with sufficient time to provide notice to the defense, were properly excluded by the trial court for failure to give notice. As we earlier discussed, there was sufficient evidence, aside from the recordings, to convict the Defendant of aggravated robbery. The trial court found good cause to allow an exception to the notice requirement, and we find no reason to disturb its judgment. The Defendant is not entitled to relief as to this issue.

## 2. Rule 404(b)

The Defendant argues that the trial court improperly admitted the recorded telephone conversations under Tennessee Rule of Evidence 404(b). The State responds that the trial court complied with the 404(b) requirements and properly admitted the recordings.

The trial court held a jury out hearing and concluded that the recordings directly impeached Gibson's testimony that: (1) she no longer cared for the Defendant; (2) she was with the Defendant on "New Year's;" and (3) the Defendant had no motive to rob the victim. The trial court found that the evidence indicated the Defendant had a "drug problem." The trial court, in balancing the probative value versus the prejudicial effect, found that the probative value of the recordings substantially outweighed the prejudicial effect.

The Tennessee Rules of Evidence provide that all "relevant evidence is admissible," unless excluded by other evidentiary rules or applicable authority. Tenn. R. Evid. 402. Of course, "[e]vidence which is not relevant is not admissible." *Id*. Relevant evidence is defined as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id*. at 401. Even relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless

presentation of cumulative evidence." *Id*. at 403.

Evidence of other crimes, wrongs, or bad acts is not admissible to prove the character of a person to show action in conformity with that character. *Id*. at 404(b). Such evidence may be admissible, however, for "other purposes." *Id*. Our Supreme Court has determined that such "other purposes" include demonstrating motive or intent. *State v. Berry*, 141 S.W.3d 549, 582 (Tenn. 2004). Such evidence is admissible for other purposes, provided that the trial court: (1) upon request, holds a hearing outside the jury's presence; (2) determines that a material issue exists other than conduct conforming with a character trait and, upon request, states the basis for its determination; (3) finds proof of the other crime, wrong, or act to be clear and convincing; and (4) determines that the probative value of the evidence is not outweighed by the danger of unfair prejudice. Tenn. R. Evid. 404(b). The safeguards in Rule 404(b) ensure that defendants are not convicted for charged offenses based on evidence of prior crimes, wrongs, or acts. *State v. James*, 81 S.W.3d 751, 758 (Tenn. 2002). When a trial court substantially complies with the procedural requirements of Rule 404(b), the standard of appellate review of the trial court's decision is abuse of discretion. *See State v. Powers*, 101 S.W.3d 383, 395 (Tenn. 2003); *State v. James*, 81 S.W.3d 751, 759 (Tenn. 2002). If the strict requirements of the rule are not substantially observed, the reviewing court gives the trial court's decision no deference. *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997).

In allowing the Defendant's statements to be admitted into evidence during the trial, the trial court held a jury out hearing and found that the recorded telephone conversations went to the truthfulness of the Defendant's alibi witness. The trial court found that the telephone conversations indicated that the Defendant had a drug problem, but the probative value of the telephone conversations substantially outweighed the prejudicial effect. The Defendant clearly offered proof, through his alibi witness, that he had no motive to commit this crime and the crime was inconsistent with his financial stability. The trial court admitted the proof to rebut the testimony that the Defendant had no motive to commit a robbery.

We conclude that the trial court properly exercised its discretion in admitting the recorded telephone conversations. Further, the trial court instructed the jury on the manner in which it should consider the telephone call evidence, and this Court must presume that a jury followed the trial court's instructions. *State v. Odom*, 336 S.W.3d 541, 562 (Tenn. 2011). The Defendant is not entitled to relief.

### III. Conclusion

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE